UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STASON SUTTON,<br><br>                    Plaintiff,<br><br>             -against-<br><br>626 EMMUT PROPERTIES, LTD. AND 10TH AVENUE GROUP, INC.<br><br>                    Defendants. | **Docket No. 1:18-cv-00090 (JPO)**<br><br>**DECLARATION IN SUPPORT** |

**BRUCE HOROWYTZ,** DECLARES, PURSUANT TO 28 USC 1746, UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, THAT THE FOLLOWING IS TRUE AND CORRECT:

1. I am a Principal of 10th Avenue Group, Inc., a defendant in the above-captioned action, which operates the subject restaurant "44 & 10 Hell's Kitchen" (the "Restaurant"), located at 622 10th Avenue, New York, NY 10036.

2. I am the owner of a small business in New York City, and for reasons explained below, I urge the Court to take decisive action to bring this case to an end and prevent a miscarriage of justice by a plaintiff and counsel whom are clearly abusing the Americans with Disabilities Act ("ADA") to extract unjustified compensation and/or attorneys' fees.

3. I am making this declaration at a time when the Restaurant is closed on account of the COVID-19 crisis. There is a distinct possibility that absent government intervention, the Restaurant may never reopen and/or may end up in bankruptcy. Nonetheless, I am making this declaration at this time, and authorizing the filing of the accompanying motion, so as to bring this matter to a reasonable, fair and appropriate ending.

4. At the outset, explained more fully below, my restaurant always welcomed and served persons with disabilities, including those in wheelchairs. We always had a portable ramp for our

main entrance to accommodate persons with disabilities. There was never any discrimination against any such persons with disabilities. As soon as the Plaintiff commenced this case, at significant expense for a small business, I arranged, among other things, to have a permanent ramp installed, reconfigure the entrance to the main floor bathroom, and modified the bathroom itself, so as to make it easily accessible to persons using wheelchairs. We had already had available, and used, table top extenders to accommodate people in wheelchairs. We also raised all of our tables to make it easier to accommodate larger wheelchairs. Rather than appreciate the immediate and thorough efforts we made in order to comply with the law, the Plaintiff and/or his counsel, persist in prosecuting this case relying on the most picky and technical violations of code standards for ADA compliance even though in reality my Restaurant is fully accessible and there is absolutely no discrimination against persons with disabilities.

5.      As I understand from counsel, and as explained in the accompanying memorandum of law, private litigants seeking to enforce the ADA do not have the right to demand absolute strict compliance with regulatory standards when someone like me has made all reasonable accommodations, and additionally awards of legal fees are discretionary and must be reasonable. I am prepared to pay a reasonable and indeed generous combined legal and expert fee of $9,500 to bring this case to an end. I urge the Court to recognize that this case is not being prosecuted in good faith and to bring this case to an end. Indeed, I urge the Court to recognize that had Plaintiff simply sent a demand letter advising that he intended to commence litigation if the Restaurant did not improve handicap accessibility, I would have addressed the issues without need for any litigation. While the law does not have a pre-litigation demand requirement, I respectfully submit the Court should limit recovery of attorneys' fee and expert fees to a reasonable amount so as to prevent abuse of the law. I suggest that where you have a Plaintiff and attorney, with an admitted history of

prosecuting ADA compliance cases as "testers" limiting fees to some amount such as $9,500, is beyond fair since these are cookie cutter lawsuits where essentially the same complaint is used over and over and there is no legal expertise needed to say a ramp is needed where there is a step. In these difficult times when restaurants may be crushed under the COVID-19 pandemic, it is time to bring some sanity and fairness to the resolution of such cases before the Court.

Introduction

6. I submit this affidavit in support of the Defendants' motion for summary judgment for an order finding that (i) Defendants have already performed renovations and alterations to its Restaurant to make "readily achievable accommodations" under the ADA, (ii) to award Plaintiff $9,500.00 in reasonable attorneys' fees and disbursements, and (iii) for the Court to mark this action disposed and for the Court to decline to exercise supplemental jurisdiction over the Plaintiff's state and local/city claims for additional monetary damages.

7. As further explained below, after being sued, my Restaurant made alterations to readily accommodate wheelchair users including without limitation (i) installing a permanent ramp, (ii) installing an electric automatic door at the ramp entrance, (iii) undertaking a major reconfiguration of the Restaurant's bathroom to ensure our wheelchair patrons have bathroom access; (iv) raising the height of the dining room tables to be ADA compliant. For purpose of this motion, it is conceded that Plaintiff may be able to identify some minor discrepancies between code requirements for handicap accessibility and existing conditions, but I ask the Court to determine, as a matter of summary judgment, that there is no reason for a trial or further discovery. For example, I readily acknowledge that in the current rebuilt handicap bathroom, the "grab bar" alongside the toilet is slightly shorter than regulations, but that is simple because the wall to which it is attached is shorter than needed to comply with requirements for new construction. The Court can take judicial

notice that it is impossible to anchor a "grab bar" to a wall if the "grab bar" is longer than the wall itself (which would require the bar to be suspended in mid air). The only way to increase the length of the wall would be to shut down the restaurant, increase the size of the bathroom by shrinking an already small kitchen, moving kitchen appliances and gas lines, all of which would shut down the restaurant (or make the restaurant impossible to continue operating), so that a "grab bar" which is currently fully functional is made a few inches longer. The ADA was never intended to, and does not require, such work which is not creating a "readily achievable accommodation." This type of issue should not stand in the way of the Court quickly and decisively resolving the case.

8. The parties recently attempted to mediate a settlement on February 25, 2020[1]. The mediation proved unsuccessful. I understand that the substance of mediation discussions are not admissible, but without addressing the substance of any mediation discussions, I respectfully submit that Plaintiff's attorneys are holding the Defendants hostage for ransom and doing everything in their power to "run the meter", "churn" attorneys' fees, and gouge the Defendants for as much money as they can.

9. I am advised by counsel that on several occasions, federal judges in both the S.D.N.Y and the E.D.N.Y have commented or outright reprimanded the Plaintiff's law firm for utilizing the aggressive litigation tactics they are using here, attempting to "shake-down" small business owners and property owners for large monetary settlements. *See* accompanying Memorandum of Law.

10. Therefore, as further detailed below, we submit that the Court should put an end to the Plaintiff's attorneys' strategy when it is undisputed that alterations have already been performed to ensure "readily achievable accommodations" to wheelchair users such as the Plaintiff. As such, I

---

[1] [See 2/25/20 Minute Entry on ECF]

respectfully request that the Court grant the Defendants' motion and put an end to the Plaintiff's counsel's "shake-down/ransom" litigation tactics.

**Background Info on Restaurant**

11. I have operated our Restaurant "44 & 10 Hell's Kitchen" for approximately twenty (20) years, since we took over the space as commercial tenants in 2000 converting a local diner into our current Restaurant. My restaurant is not part of a chain. My restaurant provides jobs for a number of people and supports me and my family. Plaintiff does not appear to care if they put me and my Restaurant out of business.

12. My Restaurant prides itself in serving "reinvented American" cuisine to an eclectic clientele, including famous patrons such as our prior city mayor and presidential candidate Mike Bloomberg, and various other celebrities such as Rosie O'Donnell, Tom Hanks, Vanessa Williams, Rhea Perlman, and Jonathan Groff to name only a few of our regular celebrity patrons. See attached Instagram Restaurant photos annexed as **Exhibit A**.

13. Notwithstanding our celebrity patronage, the Court should note that I am also a resident of the local neighborhood and live approximately 700 feet from where our Restaurant is located, and therefore I am extremely sensitive to addressing the needs and concerns of our Hell's Kitchen neighborhood. I have also served on the board of directors of my local residential cooperative building on 46th street.

14. My Restaurant team and I have always taken steps to address the concerns of our local neighborhood patrons, including our patrons with disabilities. We have served countless patrons who utilize wheelchairs without anyone making any complaints prior to the commencement of this action. In fact, we have had compliments from our wheelchair bound diners for the accessibility of

our Restaurant and the ease in which they are able to enter and egress the space, including the bathroom.

15. Prior to the commencement of Plaintiff's action, we used a "movable ramp" to assist wheelchair patrons into the Restaurant. I am advised that prior documents in the Court's docket show that even the Plaintiff posted on social media that he enjoyed eating and drinking at our Restaurant on or about July 11, 2017 (Document #64-1), before he commenced this lawsuit. Indeed, for the past twenty (20) years, both before and after Plaintiff's lawsuit, my Restaurant has always been readily accommodating to our wheelchair patrons, even though Plaintiff's attorneys are insisting otherwise in an aggressive litigation strategy aimed at squeezing the Defendants for a large monetary settlement.

16. Since it undisputed that we made "readily achievable accommodations", we now ask the Court to grant the Defendants' instant motion for summary judgment, award the Plaintiff $9,500.00 in attorneys' fees, and mark the case fully disposed and off the Court docket/calendar. In reality, this case was unnecessary in the first place. At this point, $9,500 is more than fair compensation for commencing an unnecessary case.

Undisputed Facts: ADA Remediations Performed After Lawsuit Commenced

17. After the Plaintiff commenced and served his lawsuit against the Defendants, I hired an ADA accessibility expert, Accessibility Services ("ACS"), as well as construction professionals to correct any architectural barriers that Plaintiff was claiming were impeding his ability to access and dine in our Restaurant.

18. Promptly after this case was commenced, upon the advice of Defendants' expert, ACS, without the need for discovery or any judicial prompting, we installed the following:

(a) <u>Permanent Ramp</u>: The installation of a permanent ramp, photos of which are annexed hereto as **Exhibit B**;

(b) <u>Electric Automatic Door annexed to Ramp</u>:  The installation of an electric automatic door as an entrance from the permanent ramp, photos of which are annexed hereto as **Exhibit C**, *See also* video which can be viewed at this link: https://dlpartnerslaw-my.sharepoint.com/:f:/g/personal/egarcia_dagll_com/EjEO8mpfMclOgK6pQJO78jcBJzPvYzPxzIx9tg7h7rfugw?e=tGVWPN;

(c) <u>ADA Renovation of the Main Bathroom</u>:   A complete renovation of the main dining room bathroom to make it as readily ADA compliant as was actually possible, which included: taking down a wall to completely reconfigure the entrance to the bathroom, removing prior sink and installing a new ADA compliant sink including the removal of any lower pipe obstructions, installing ADA compliant mirror, installing "wall-to-wall" railings throughout the entirety of the bathroom, reconfiguring the toilet including installing an ADA compliant flusher/knob.  Photographs of the ADA renovated main dining room bathroom are annexed hereto as **Exhibit D**.

(d) <u>Dining Room Tables raised to be ADA compliant</u>: Also, the Restaurant has undertaken the task of raising the height of all its dining room tables so that they are ADA compliant and readily accessible for our wheelchair patrons (*See* **Exhibit E**).

<u>For Purposes of this Motion Defendant Concedes that Plaintiff can Identify Minor Variations Between  Building Code for ADA Accessibility and Existing Corrected Conditions</u>

19. Although we submit that we have attempted to go "above and beyond" in offering "readily achievable accommodations", for purposes of this motion, we must concede that not everything is 100% in line with building code requirements for handicap accessibility of new

construction, but we ask the Court to recognize that the standard for an ADA lawsuit is making "readily achievable accommodations."

20. To the extent that Plaintiff's counsel makes hyper-technical arguments as to code compliance such as

(a) *"the configuration of the bathroom and its railing is not 100% complaint by a half inch, etc."*- RESPONSE: it would be impossible to further reconfigure the bathroom and its walls without having to completely interfere with the kitchen's gas lines, water lines, and dishwasher equipment, and therefore any further reconfiguration would NOT be "readily achievable" (if not actually impossible) and/or it would be "disproportionate" to the overall cost of the entire alteration to the point of being cost prohibitive, or

(b) *"that the ramp on a side-entrance is a discriminatory entranceway that should be granted to the main entranceway"* RESPONSE: having a dedicated permanent ramp in one entranceway is what is required under the ADA, and it is what was readily achievable at an already great expense to the Defendants[2];

(c) *"access to basement bathroom should be ADA complaint"* RESPONSE: Requesting an ADA compliant bathroom in the "basement bathroom" is a red-herring since (i) there is no dining service in the basement and therefore there would be no actual need to want to have access to the basement bathroom (except for the purpose of litigation harassment by Plaintiff's attorneys), and (ii) I am advised by ACS that this is not what is required by the ADA's regulations; (iii) it would be unfeasible/impossible to do so without being completely cost-prohibitive, and disproportionate to the overall cost of the alterations.

---

[2] If Plaintiff truly wishes to enter through the main entranceway (as opposed to the entranceway with a dedicated/permanent ramp), he is free to do so with our movable ramp which we have been utilizing with our patrons for the past 20 years.

Conclusion

21. In short, we respectfully submit to the Court that our Restaurant may not be 100% perfect when it comes to complying with building code and other regulatory requirements but it does comply with the letter and spirit of the ADA law. The ADA law was never intended to be a "money grab", "cash-cow" or a "golden-goose" for aggressive litigation attorneys to be awarded massive monetary settlements, which is exactly what the Plaintiff's attorneys are trying to accomplish here. Quite the contrary, I am advised that the ADA law was always intended to have a "remedial effect", aimed at ensuring "readily achievable accommodations" and removing architectural barriers that may have prevented disabled patrons from accessing public accommodations.

22. The current COVID-19 pandemic may well shut down the Restaurant permanently, absent some government help. The time is ripe for the Court to address unabashed "money grabs" against small businesses which cannot afford inflated attorneys' fee claims.

23. My Restaurant and team have always taken these ADA issues seriously, which is why we have already performed these remediations after being served with this lawsuit. Therefore, we now move for summary judgment for an ordering finding that we have made "readily achievable accommodations", which should not be in dispute, and otherwise marking this case disposed.

24. Therefore, we respectfully ask that the Court put an end to the Plaintiff's counsel's aggressive litigation tactics, and enter a final judgment disposing of this case and awarding the Plaintiff's counsel attorney's fees in the amount of $9,500.00, and dismissing state court claims without prejudice.

Declared: March 30, 2020

BRUCE HOROWYTZ